## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY NAVIN AND JOHN O'REILLY, on behalf of themselves and of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., WELLS FARGO INSURANCE, INC., ASSURANT INC., AMERICAN SECURITY INSURANCE COMPANY, AMERICA'S SERVICING COMPANY and HSBC BANK USA,<br><br>Defendants. | No. 3:15-cv-671 (MPS) |

### MEMORANDUM AND ORDER

Plaintiff Jeffrey Navin—who recently died—and *pro se* plaintiff John O'Reilly (collectively, "Plaintiffs") have brought this lawsuit against the following Defendants: HSBC Bank USA, N.A. ("HSBC"); Wells Fargo Bank, N.A., America's Servicing Company, and Wells Fargo Insurance, Inc. (collectively, the "Wells Fargo Defendants"); and Assurant Inc. ("Assurant") and its subsidiary American Security Insurance Company ("ASIC"), (collectively, the "Assurant Defendants"). (First Amended Complaint ("FAC"), ECF No. 8 at 1.) The First Amended Complaint ("FAC") alleges that Defendants forced residential borrowers, such as Navin, to pay for homeowners' insurance obtained by lenders to protect the lenders' interests, and derived improper financial benefits from such "forced-placed insurance." (*Id*. at 2.) "Plaintiffs seek[] to recover damages equal to the amount of the improper and inequitable financial benefit received by Defendants and/or their affiliates as a result of this anti-consumer practice, and to rescind the future collection of amounts charged against the mortgage accounts of residential borrowers but not yet collected." (*Id*. at 2.)

Plaintiffs, who seek to represent classes of similarly situated individuals, assert the following claims against Defendants: breach of contract (Count One); unjust enrichment (Count Two); violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c) (Count Three); RICO conspiracy (Count Four); aiding and abetting breach of fiduciary duty (Count Five); and violation of the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a *et seq*. ("CUTPA")[1] and the Connecticut Unfair Insurance Practices Act, C.G.S. § 38a-815 *et seq*. ("CUIPA")[2] (Count Six). Plaintiffs also seek declaratory and injunctive relief (Count Seven).

The Assurant Defendants move to dismiss the FAC under Rules 9(b), 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 50.) The Wells Fargo Defendants move to dismiss the FAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 66.) HSBC moves to dismiss the FAC under Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 87.) Finally, following Navin's death, O'Reilly moved "for an order of substitution as successor, manager, and father-in-law" of Navin. (ECF No. 101.) For the reasons set forth below, the Court DENIES O'Reilly's motion to substitute for Navin, and GRANTS Defendants' motions to dismiss.

## I.    FACTUAL BACKGROUND

The following facts are taken from the FAC and from documents outside of the pleadings that the Court may consider in resolving a motion to dismiss under Rule 12(b)(6), including the

---

[1] C.G.S. § 42-110b(a) provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

[2] C.G.S. § 38a-815 provides in relevant part: "No person shall engage in this state in any trade practice which is defined in section 38a–816 as . . . an unfair method of competition or an unfair or deceptive act or practice in the business of insurance . . . ."

order issued by the Appellate Court for the State of Connecticut on June 28, 2011, in *HSBC Bank, N.A. v. Navin*, 129 Conn. App. 707, 708, 22 A.3d 647, 648 (2011) affirming the judgment of strict foreclosure on Navin's property rendered on February 22, 2010 (ECF No. 68, Exhibit C), and the "Open-End Mortgage Deed" securing the loan Navin obtained from American Brokers Conduit for the Property.[3] (Open-End Mortgage Deed, ECF No. 54 at 4-18 and ECF No. 68-2 at 8-21 (hereafter "Open-End Mortgage Deed").)

### A. The Property and the Mortgage

At all times relevant to the FAC, Navin and O'Reilly resided at 7 Hart Landing in Guilford, Connecticut (the "Property"). (FAC ¶ 20.) According to the FAC, Navin owned the Property and O'Reilly "is the manager."[4] (*Id*.) On October 5, 2005, Navin, as the borrower and mortgagor, executed a promissory note in the amount of $1,313,000 to the lender, American Brokers Conduit. (Open-End Mortgage Deed; *HSBC Bank, N.A. v. Navin*, 129 Conn. App. 707, 709, 22 A.3d 647, 648 (2011).) As security for the note, Navin conveyed an interest in the Property by executing a mortgage deed in favor of Mortgage Electronic Registration Systems,

---

[3] In addition to the complaint, the court may consider "documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation and internal quotation marks omitted). The Court may take judicial notice of documents filed in other cases and of public records. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (noting that a court may take judicial notice of public records on a motion to dismiss only to establish their existence, not for the truth of the facts stated in them); *Shakur v. Bruno*, No. 3:12CV984 SRU, 2014 WL 645028, at *1 (D. Conn. Feb. 18, 2014) ("Judicial notice may be taken of documents filed in other cases and other courts.") (citation omitted).

[4] Although O'Reilly does not allege in the FAC that he was the owner of the Property, O'Reilly's motion to substitute, which was filed on December 16, 2016, after briefing on the motion to dismiss was completed, requests that the Court take judicial notice of a quitclaim deed, dated November 13, 2008, transferring title of the Property from Navin to O'Reilly. The deed was filed on the Guilford Land Records, Book 892, pages 1040-104 (ECF No. 101 at 2), and recorded on December 10, 2015. (ECF No. 101-1 at 4.) This issue is discussed further below.

Inc., a nominee of American Brokers Conduit. (Open-End Mortgage Deed; *Navin v. HSBC Bank USA, Nat. Ass'n*, No. 3:12-CV-00752 SRU, 2013 WL 3965123, at *1 (D. Conn. Aug. 2, 2013).) Navin's mortgage was recorded in volume 706 of the official records of New Haven County at pages 598 through 612. (Open-End Mortgage Deed.) On October 5, 2005, the mortgage and note were assigned to HSBC, as trustee for Deutsche ALT-A Securities, Inc.[5] (Plaintiffs' Request for Judicial Notice, Ex. A, ECF No. 102-1 at 2.) After Navin fell behind on his mortgage payments, HSBC brought a foreclosure action against Navin, and the Connecticut Appellate Court affirmed judgment of strict foreclosure in favor of HSBC. *See Navin*, 129 Conn. App. at 709.

### B.  Forced-Placed Insurance

According to the FAC, "Mortgage Lenders require borrowers to purchase and agree to maintain hazard insurance coverage on the secured property as a condition to funding home loans." (FAC ¶ 3.) Navin and members of the proposed class "were required to obtain and maintain hazard insurance as a condition of their mortgages." (*Id*.) When borrowers fail to maintain hazard insurance policies for their properties, mortgage agreements generally allow lenders to require borrowers to pay for insurance policies to protect the lenders' interests in the mortgaged properties. Such polices—known as "lender-placed insurance" ("LPI") or "force-placed hazard insurance" ("FPI") policies—often provide less coverage and are more expensive than the borrowers' original insurance policies. (*Id*. ¶ 4.)

### C.  The Parties

HSBC is a lender (FAC ¶ 21), and Assurant is a provider of LPI or FPI through its Assurant Specialty Property business. (*Id*. at ¶ 24.) ASIC, a wholly owned subsidiary of

---

[5] Plaintiffs argue that the mortgage and assignment were invalid because the lender, American Brokers Conduit, is not a New York Corporation and is a "fictitious entity." (Plaintiffs' Request for Judicial Notice, ECF No. 102.)

4

Interfinancial, Inc., which is a wholly owned subsidiary of Assurant, provided FPI for the Property. (*Id*. ¶ 25.) The FAC alleges, upon information and belief, that ASIC acts as the FPI vendor for Wells Fargo, and its duties include "tracking loans in Wells Fargo's mortgage portfolio, handling all customer service duties related to [FPI], and securing [FPI] policies on properties when a borrower's insurance has lapsed." (*Id*.) Wells Fargo Bank, N.A., (through its division, America's Servicing Company) services Navin's mortgage. (Wells Fargo Defendants' Memorandum in Support of their Motion to Dismiss, ECF No. 67 at 13, p. 5; *see also* Pooling and Servicing Agreement between Deutsche Alt-A Securities, Inc. as Depositor, Wells Fargo Bank, N.A. as Master Servicer and Securities Administrator, and HSBC Bank USA, N.A. as trustee, dated November 1, 2005, ECF No. 90-1 at 7, 32.) The FAC alleges, upon information and belief, that Wells Fargo Insurance, a division of Wells Fargo Bank, N.A., "does nothing to assist in obtaining [FPI policies] and exists only so Wells Fargo [Bank, N.A.] can collect kickbacks or commissions related to the [FPI policies]." (FAC ¶ 23.)

### D.  The Claims

The Open-End Mortgage Deed contains a provision allowing the lender to obtain FPI on the Property if the borrower fails to maintain his own hazard insurance. (FAC ¶ 26.) It provides, in relevant part:

> If Borrower fails to maintain any [hazard insurance], Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of

disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

(Open-End Mortgage Deed, ECF No. 54 at 9 §5.) Generally, the FAC alleges that Defendants derived improper financial benefits by imposing FPI on properties and charging improper fees unrelated to the cost of FPI. (FAC ¶¶ 2-5.) Plaintiffs allege that mortgage lenders and servicers select FPI providers according to secret, pre-arranged agreements that provide financial benefits to the FPI providers, who kickback some of those financial benefits to the mortgage lenders or servicers. (*Id.* ¶¶ 30-32.) Plaintiffs seek to certify two classes: (1) individuals who have been victimized by Defendants in the FPI "illegal enterprise," and (2) individuals who have been "victims of illegal foreclosure actions" brought about by false, ROBO-signed, or perjured documents. (*Id.* ¶ 109.)

In Count One, Plaintiffs sue HSBC and the Wells-Fargo Defendants for breach of contract, including breach of the implied covenant of good faith and fair dealing. (*Id.* ¶¶ 110-23.) Plaintiffs allege that HSBC and the Wells Fargo Defendants "were contractually obligated to service" their loans "pursuant to the terms of their mortgage agreements" and in good faith. (*Id.* ¶¶ 113-14.) Plaintiffs allege, however, that HSBC and the Wells Fargo Defendants breached their contractual obligations "[b]y force-placing insurance that goes well beyond the pale of what is required to protect their interests" (*Id.* ¶ 119), and by fabricating evidence and assignments related to mortgage foreclosures. (*Id.* ¶¶ 120-21.) Plaintiffs allege that HSBC and the Wells Fargo Defendants breached their duties of good faith and fair dealing by, among other things: "receiv[ing] kick-backs for claim damages without ever attempting to repair" the damaged properties, leaving occupants in danger; failing to maintain borrowers' existing insurance policies; forcing borrowers to pay high prices for insurance; and backdating FPI policies to cover time periods that had already passed and for which there was no risk of loss. (*Id.* ¶ 116.)

In Count Two, Plaintiffs sue all Defendants[6] for unjust enrichment, alleging that Plaintiffs "conferred a substantial benefit upon the Assurant Defendants" by paying FPI premiums for "unnecessary and exorbitantly priced FPI policies" on their properties. (*Id.* ¶¶ 125-26.) Further, Plaintiffs allege that HSBC and the Wells Fargo Defendants defrauded Navin and class members by conducting illegal foreclosures with fraudulent documents. (*Id.* ¶¶ 128-29.) Plaintiffs seek restitution and disgorgement. (*Id.* ¶¶ 129-30.)

In Counts Three and Four, Plaintiffs bring claims against all Defendants for violation RICO, 18 U.S.C. § 1964(c)[7] and for conspiracy to violate RICO, 18 U.S.C. § 1962(d). Plaintiffs allege that Defendants violated 18 U.S.C. § 1962(c)[8] and caused injury to their business or property by conducting or participating in the "FPI enterprise" and "through a pattern of racketeering acts" including mail fraud and wire fraud.[9] (FAC ¶¶ 134-35; 84-89.) "For the purpose of executing and/or attempting to execute the above described scheme to obtain money by means of false or fraudulent pretenses, representations or promises," Defendants allegedly caused loan documents, applications, correspondence, agreements, notices, and checks related to

---

[6] Although the title suggests that the claim for unjust enrichment in Count Two was only brought against the Assurant Defendants, the remaining allegations described in Count Two suggest that Plaintiffs intend to assert this claim against all Defendants.

[7] 18 U.S.C. § 1964(c) provides, in relevant part: "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."

[8] 18 U.S.C. § 1962(c) provides, in relevant part: "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

[9] Racketeering activities include, among other things, acts that are indictable under 18 U.S.C. §§ 1341 (relating to mail fraud) and 1343 (relating to wire fraud). 18 U.S.C. § 1961(1).

FPI to be delivered by the Postal Service or transmitted by wire (or knew and agreed to such delivery or transmission). (*Id*. ¶¶ 85-87.) Such notices included "cycle letters" that informed Plaintiffs of Defendants' authority to place FPI policies, and that contained "half-truths" and "misinformation." (*Id*. ¶ 88.) Plaintiffs also allege that HSBC and the Wells Fargo Defendants "forge[d] and falsif[ied] documents in their attempt to illegally foreclose" on properties. (*Id*. ¶ 78.)

Plaintiffs allege that they were injured by Defendants' conduct. First, they were forced to pay for high-cost, unnecessary, and duplicative FPI. (*Id*. ¶ 91) Second, "[w]hen a claim was put in for serious water damage, Defendant Assurant, after agreeing to compensate the claim, took the total proceeds and kicked them back" to HSBC and the Wells-Fargo Defendants. (*Id*.) Plaintiffs were left with water damage and no money to repair the damage. (*Id*.) The inhabitants of the Property—O'Reilly, his wife, and his son—were exposed to hazardous mold for nearly six months. (*Id*.) Finally, the kitchen ceiling collapsed on O'Reilly, injuring him. (*Id*.; *see* ECF No. 72 at 24 (explaining that "O'Reilly does in fact seek monetary, declaratory, injunctive, and other relief for his personal injuries, his wife's injuries, and his son's injuries and the continuing health dangers associated with exposure to the mold, open ceilings and the like.").) Plaintiffs also allege that they were harmed by Defendants' conduct in forging documents, perjuring themselves, swearing falsely, and "fabricat[ing] false documents to be used in illegal foreclosure actions against" them. (FAC ¶ 92.)

In Count Five, Plaintiffs sue the Assurant Defendants for aiding and abetting HSBC and the Wells Fargo Defendants in breaching alleged fiduciary duties owed to Navin and the class. Navin alleges that Assurant "actively induced and/or participated" in the breach of fiduciary duties by "providing tracking services that identified and implemented" FPI. (*Id*. ¶¶ 140-43.) As

a result, Plaintiffs allege that they "suffered damages in the form of unnecessary and excessive escrow charges, unnecessary and improper depletion of escrow funds intended for and properly allocated to other Escrow Items, a loss of funds from their escrow accounts, and/or loss of equity in the property due to increases in the amounts due under the mortgage to cover escrow shortfalls." (*Id*. ¶ 144.)

In Count Six, Plaintiffs bring claims against all Defendants for violation of the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a *et seq*. ("CUTPA") and the Connecticut Unfair Insurance Practices Act, C.G.S. § 38a-815 *et seq*. ("CUIPA"). (*Id*. ¶¶ 146-51.) Plaintiffs allege that Defendants engaged in the following deceptive acts and practices: failing to maintain borrowers' existing insurance policies and seeking to maximize their own financial gain by placing FPI (according to pre-arranged secret deals) with greater premiums and less coverage than borrowers' existing policies "in bad faith and in contravention of the parties' reasonable expectations"; assessing excessive, unreasonable, and unnecessary premiums and misrepresenting the reasons for the policies' costs; backdating FPI policies to cover time periods that had already passed (for which there was no risk of loss), or for which borrowers were already covered; misrepresenting borrowers' obligations; and failing to provide borrowers with opportunities to opt-out of FPI policies that were provided by insurers with whom Defendants had commission or affiliate relationships. (*Id*. ¶ 148.)

In Count Seven, Plaintiffs seek declaratory and injunctive relief against all Defendants. (*Id*. ¶¶ 152-57.) Plaintiffs seek a judgment declaring that Defendants must cease the FPI and "fraudulent foreclosure" activities described in the FAC, provide adequate remedies (including refunds and credits), and provide adequate procedures to ensure that Defendants' conduct ceases. (*Id*. ¶¶ 154-55.)

## II.    LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts all of the complaint's factual allegations as true when evaluating a motion to dismiss. *Id.* at 572. The Court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). "When a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant defendants['] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004) (internal quotation marks and citation omitted). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010) (internal quotation marks and citation omitted). In assessing a motion to dismiss for failure to state a claim, courts may consider only the complaint, documents attached to or incorporated in the complaint, and matters of which judicial notice may be taken. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

## III.    DISCUSSION

### A.  Motion for Substitution Fails

On November 20, 2015, the Wells Fargo Defendants filed a "suggestion of death" as to Navin pursuant to Rule 25 of the Federal Rules of Civil Procedure (ECF No. 97), which provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the

> decedent's successor or representative. If the motion is not made within 90 days
> after service of a statement noting the death, the action by or against the decedent
> must be dismissed.

Fed. R. Civ. P. 25(a)(1). On December 16, 2016, O'Reilly, *pro se*, timely filed a motion for an

order of substitution as Navin's successor and representative under Rule 25 of the Federal Rules

of Civil Procedure. (ECF No. 101 at 1-2.) O'Reilly's motion stated that, on October 30, 2015,

Navin's remains—along with those of his wife—"were found having been brutally murdered.

Their son is charged with their murders." (*Id.*)

Whether a person is "the proper party" is "a question of state law." *Coleman v. Sys.*

*Dialing LLC*, No. 15CV3868 (DLC), 2016 WL 1169518, at *2 (S.D.N.Y. Mar. 22, 2016); *Falls*

*v. Novartis Pharm. Corp.*, No. 3:13CV270 JBA, 2014 WL 3810246, at *2 n.3 (D. Conn. Aug. 1,

2014) (noting that "state substantive law determines whether a claim survives death").

Connecticut's Survival Statute provides that "[a] cause or right of action shall not be lost or

destroyed by the death of any person, but shall survive in favor of or against the executor or

administrator of the deceased person." Conn. Gen. Stat. § 52-599(a). O'Reilly does not allege

that he is the executor or administrator of Navin's estate. Instead, he alleges that he is the

"Father-in-Law, Manager, Successor, and the Proper Representative, as well as co-Plaintiff in

this case, and the owner of title of the property at issue." (Plaintiff's Reply to Defendansts' Joint

Motion in Opposition to Plaintiff's Motion to Substitute, ECF No. 107 at 3.) None of these

capacities is sufficient to make O'Reilly the "proper party" under the Connecticut Survival

Statute. Because O'Reilly is not the "proper party" and there has been no motion to substitute a

proper party as the plaintiff within 90 days of the suggestion of death, Navin's claims are

dismissed. Fed. R. Civ. P. 25(a)(1) ("If the motion is not made within 90 days after service of a

statement noting the death, the action by or against the decedent must be dismissed.").

**B.  Remaining Plaintiff O'Reilly Fails to State a Claim**

Defendants argue that O'Reilly is not a party to Navin's mortgage and therefore does not have standing to sue any of the Defendants in this action. (*See* Assurant Defendants' Memorandum in Support of Motion to Dismiss, ECF No. 50-1 at 23-24, p. 15-16; Wells Fargo Defendants' Memorandum in Support of Motion to Dismiss, ECF No. 67 at 40, p. 32; HSBC's Memorandum in Support of Motion to Dismiss, ECF No. 88 at 14, p.7.)

> Article III standing consists of three "irreducible" elements: (1) *injury-in-fact,* which is a "concrete and particularized" harm to a "legally protected interest"; (2) *causation* in the form of a "fairly traceable" connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability,* or a non-speculative likelihood that the injury can be remedied by the requested relief.

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)). "Injury-in-fact" generally requires that the plaintiff "personally suffered" an actual or threatened injury. *Id.* at 107 (citing *Lujan,* 504 U.S. at 560 n.1).

O'Reilly alleges that he suffered an injury as a result of the following events. The Property suffered serious water damage, and the Plaintiffs filed an insurance claim. (FAC ¶ 11.) Defendant Assurant agreed to pay the claim, but instead of paying to repair the damage to the Property, "took the total proceeds and kicked them back" to HSBC and the Wells-Fargo Defendants. (*Id.* ¶ 53.) O'Reilly was left with water damage to the Property and no money to repair the damage. (*Id.*) The inhabitants of the Property—O'Reilly, his wife, and his son—were exposed to hazardous mold for nearly six months. (*Id.*) Finally, the kitchen ceiling collapsed on O'Reilly, injuring him. (*Id.*; *see* ECF No. 72 at 24 (explaining that "O'Reilly does in fact seek monetary, declaratory, injunctive, and other relief for his personal injuries, his wife's injuries, and his son's injuries and the continuing health dangers associated with exposure to the mold,

open ceilings and the like.").) O'Reilly alleges that these personal injuries are traceable to

Defendants' fraudulent kick-back scheme and can be redressed by monetary damages.

Construing the complaint liberally in favor of *pro se* plaintiff O'Reilly, and drawing all

reasonable inferences in O'Reilly's favor, the Court finds that O'Reilly suffered "concrete and

particularized" injuries from the exposure to mold and the collapse of a ceiling, that such injuries

are traceable to Defendants' alleged actions, and that they are redressable by monetary damages.

O'Reilly has thus alleged facts that plausibly suggest that he has standing. Nevertheless, as

shown below, O'Reilly fails to state a claim on which relief may be granted.

### 1. Count One: Breach of Contract

The FAC alleges that O'Reilly is a "manager" of the Property. It does not allege that he

was a party to or a contemplated beneficiary of the mortgage loan agreement relating to the

Property or that he was otherwise a borrower. It does not allege that he was a party to the state

court foreclosure proceedings on the Property. It does not allege that he paid FPI premiums on

the Property or otherwise that he entered into any contracts with Defendants.[10] Therefore,

O'Reilly may not sue Defendants for breach of contract. *Tomlinson v. Bd. of Educ. of City of

Bristol*, 226 Conn. 704, 718, 629 A.2d 333, 341 (1993) ("It is well settled that one who [is]

neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the

promises of the contract. . . .") (citations and internal quotation marks omitted). Similarly, he

fails to state a claim for breach of the covenant of good faith and fair dealing. *Capstone Bldg.

Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 795, 67 A.3d 961, 987 (2013) ("because the

covenant of good faith and fair dealing only requir[es] that neither party [to a contract] do

---

[10] The FAC also does not allege that Navin or anyone else ever actually paid the FPI premiums, either.

anything that will injure the right of the other to receive the benefits of the agreement, it is not implicated by conduct that does not impair contractual rights.") (internal quotation marks omitted).[11]

### 2. Count Two: Unjust Enrichment

Plaintiffs allege that all Defendants were unjustly enriched. Specifically, Plaintiffs allege that they "conferred a substantial benefit upon the Assurant Defendants" by paying FPI premiums for "unnecessary and exorbitantly priced FPI policies" on their properties. (FAC ¶¶ 125-26.) Further, Plaintiffs allege that HSBC and the Wells Fargo Defendants defrauded Navin and class members by conducting illegal foreclosures with fraudulent documents. (*Id.* ¶¶ 128-29.) Plaintiffs seek restitution and disgorgement. (*Id.* ¶¶ 129-30.)

"Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433, 451–52, 970 A.2d 592, 609 (2009) (citations and quotation marks omitted.) O'Reilly does not allege that he was an insured or a policyholder of any FPI policy, and does not allege that he either paid or incurred premiums or other financial losses as the result of the issuance of such a policy. Because O'Reilly fails to allege that he conferred any benefit of any kind on the Defendants, he cannot plausibly state a claim for unjust enrichment.

### 3. Counts Three and Four: RICO

---

[11] For the first time in Plaintiffs' opposition briefs, they allege that the mortgage loan agreement and assignment "are void because the party in whose favor they are drafted and signed," the lender, American Brokers Conduit, does not exist. (ECF No. 72 at 2; ECF No. 76 at 2; ECF No. 92 at 2.) This allegation is contradicted by the FAC, including Plaintiffs' claim for breach of contract, which is based on the existence of a valid mortgage contract.

Under 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of section 1962" may sue in district court. "To establish a civil RICO claim, a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation. The pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (internal quotation marks and citations omitted). Racketeering activities include, among other things, acts that are indictable under 18 U.S.C. §§ 1341 and 1343, which criminalize mail and wire fraud, respectively. 18 U.S.C. § 1961(1). The FAC alleges that Plaintiffs were injured by being forced to pay for high-cost, unnecessary, and duplicative FPI (FAC ¶ 91), by Defendants' conduct in forging documents, perjuring themselves, swearing falsely, and "fabricat[ing] false documents to be used in illegal foreclosure actions against" them (*id*. ¶ 92), and by Defendants' "indictable violations of 18 U.S.C. §§ 1341 and 1343. (*Id.* ¶ 89.) Because O'Reilly did not pay FPI premiums and was not a party to the foreclosure actions, however, these were not injuries that he suffered.

Furthermore, because the RICO claims rest on alleged acts of mail and wire fraud, O'Reilly "must state with particularity the circumstances constituting fraud or mistake." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (citing Fed.R.Civ.P. 9(b)). The "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id.* (internal quotation marks and citations omitted).

The FAC alleges that Defendants caused loan documents, applications, correspondence, agreements, notices, and checks related to FPI to be delivered by the Postal Service or transmitted by wire. (FAC ¶¶ 85-87.) Such notices included "cycle letters" that informed Plaintiffs of Defendants' authority to place FPI policies, and that contained "half-truths" and "misinformation." (*Id*. ¶ 88.) Plaintiffs allege that HSBC and the Wells Fargo Defendants "forge[d] and falsif[ied] documents in their attempt to illegally foreclose" on properties. (*Id*. ¶ 78.) Such conclusory allegations do not satisfy Rule 9(b). Because O'Reilly has not alleged particulars about Defendants' alleged fraudulent statements—such as specific statements, when and where they were made, and those responsible for making them—he fails to state a RICO claim.

O'Reilly alleges that "[w]hen a claim was put in for serious water damage, Defendant Assurant, after agreeing to compensate the claim, took the total proceeds and kicked them back" to HSBC and the Wells-Fargo Defendants. (FAC ¶ 91.) As a result, he alleges, he, his wife, and his son were exposed to hazardous mold for nearly six months, and the kitchen ceiling collapsed on him. Such personal injuries are not covered by RICO. "It is beyond dispute that personal injuries are not injuries to 'business or property.'" *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 329 (E.D.N.Y. 2012) (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)); *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2108 (2016) (noting that RICO's private cause of action is limited "to particular kinds of injury—excluding, for example, personal injuries . . . ."). The economic consequences of personal injuries are also not injuries to "business or property." *Zimmerman*, 888 F. Supp. 2d at 330 (citing cases). Thus, O'Reilly fails to state a RICO claim. And because "RICO conspiracy claims are entirely dependent on . . . substantive

RICO claims," the RICO conspiracy claims are also dismissed. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 164 (2d Cir. 2004).

### 4.    **Count Five: Aiding and Abetting Breach of Fiduciary Duty**

O'Reilly's claim that the Assurant Defendants aided and abetted the HSBC and Wells Fargo Defendants in breaching alleged fiduciary duties similarly fails. The FAC does not plausibly allege that the HSBC and Wells Fargo Defendant owed fiduciary duties to O'Reilly. "A fiduciary relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interest of the other." *Southbridge Associates, LLC v. Garofalo*, 53 Conn. App. 11, 18, 728 A.2d 1114, 1118–19 (1999) (citations and internal quotation marks omitted). O'Reilly is not a borrower or a party to any contract with any of the Defendants, and does not allege that he had any relationships with any of the Defendants. O'Reilly does not allege sufficient facts to suggest that any of the Defendants had a fiduciary duty to him, and thus he may not bring a claim for aiding and abetting breach of fiduciary duty.

### 5.    **Count Six: Violation of CUTPA and CUIPA**

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat.. § 42-110b(a). "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." Conn. Gen. Stat. § 42-110g(a). "[I]n order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that . . . the prohibited act was the proximate cause of a harm to the plaintiff." *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 306, 692 A.2d 709, 712

(1997) (citation omitted) (emphasis in original). "The question to be asked in ascertaining whether proximate cause exists is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's act." *Id*. (citations and quotation marks omitted).

The only injuries O'Reilly alleges he suffered are personal injuries caused by water damage to the Property. O'Reilly alleges that "[w]hen a claim was put in for serious water damage, Defendant Assurant, after agreeing to compensate the claim, took the total proceeds and kicked them back to HSBC-Wells Fargo Defendants through America's Servicing Company," leaving O'Reilly and Navin without repairs or money to repair the water damage. O'Reilly seems to allege that Defendants' failure to pay for repairs exposed him to mold and caused the Property's ceiling to collapse on top of him. He seeks monetary and other relief for his injuries. Even if such personal injuries are covered under CUPTA, and even if Defendants' "deceptive acts or practices" were prohibited by CUTPA, O'Reilly has not plausibly alleged that Defendants' conduct proximately caused his injuries. O'Reilly is a stranger to all of the Defendants' acts specifically identified as violations of CUTPA and CUIPA—failing to maintain borrower's existing insurance, using "discretion to choose a forced-placed insurance provider and policy in bad faith," selecting FPI providers "according to pre-arranged secret deals," "[a]ssessing excessive . . . premiums," "backdating" FPI policies, and the like. (FAC ¶ 148.) Again, O'Reilly was neither a borrower nor an insured, and paid no mortgage payments or insurance premiums. To the extent the Defendants engaged in these acts, they did not proximately cause O'Reilly any harm.

In addition, the FAC, together with the mortgage agreement, make clear that the purpose of LPI is to protect the *lenders'* interest in the Property. It is thus doubtful that the lenders or the

insurers under a LPI policy owe any duty to the borrower/homeowner arising from the administration of claims under the FPI. And, in any event, it is clear that such entities owe no duty to a person *not* the owner and not, as far as the FAC alleges, even known to the lenders and insurers to reside in the Property. It was thus not foreseeable that Defendants' conduct in forcing Navin to obtain LPI and administering claims under the LPI would result in physical injuries to O'Reilly or members of his family.

Further, O'Reilly has not alleged that he was a consumer, a competitor, or some other businessperson affected by Defendants' deceptive acts. *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 233 (D. Conn. 2014) (granting defendant's motion for summary judgment because plaintiff was not a consumer or competitor of defendant and was not in a business relationship with defendant). "Hence, [he is] are not within the class of claimants which CUTPA intended to protect." *Gersich v. Enter. Rent A Car*, No. CIV. 3:95CV01053 AHN, 1995 WL 904917, at *5 (D. Conn. Nov. 20, 1995) (CUTPA claim fails because "plaintiffs, by virtue of being in a motor vehicle accident with a customer of [Defendant], are not consumers or competitors of [Defendant] or other businesspersons affected by [Defendant's] conduct.").

Because O'Reilly's CUTPA claim fails, his CUIPA claim also fails. "CUIPA does not provide a private cause of action," *Loubier v. Allstate Ins. Co.*, No. 309CV261JBA, 2010 WL 1279082, at *4 (D. Conn. Mar. 30, 2010) (citing *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 119 (2d Cir. 2001)); *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 623, 119 A.3d 1139, 1150 (2015) ("CUIPA . . . does not authorize a private right of action . . . ."). "[H]owever, violations of CUIPA may be alleged as a basis for a CUTPA claim." *Tucker v. Am. Int'l Grp., Inc.*, No. 3:09-CV-1499 (CSH), 2016 WL 1367725, at *3 (D. Conn. Apr. 5, 2016) (citations and internal quotation marks omitted).

19

CUIPA identifies a number of "unfair settlement claims practices." *Hipsky v. Allstate Ins. Co.*, 304 F. Supp. 2d 284, 290 (D. Conn. 2004) (citing Conn. Gen. Stat. § 38a-816(6)). But even if the Assurant Defendants engaged in such practices, the majority of Connecticut Superior Courts have held that CUIPA does not create rights in third-party claimants against an insurer under Conn. Gen. Stat. § 38a-816(6). *See Hipsky*, 304 F. Supp. 2d at 292. Although O'Reilly's opposition briefs state that he "filed a claim of damage to the property," (ECF No. 72 at 24; ECF No. 76 at 33; ECF No. 92 at 39), there are no allegations in the FAC from which the Court could infer that O'Reilly was a policy-holder or an insured, or that any insurer otherwise owed him any duty. At best, the Court may infer that O'Reilly submitted a claim as Navin's agent, which might impose on the Assurant Defendants a duty to Navin, his principal. Thus, O'Reilly's CUIPA claim also fails for this reason.

### 6.  Count Seven: Declaratory and Injunctive relief

Finally, because O'Reilly fails to state a claim in Counts One through Six, his claim for the remedies of declaratory and injunctive relief also fails, and the Court dismisses the FAC.

### C.  Leave to Amend

After the motion to dismiss was fully briefed, O'Reilly filed a motion to substitute on December 16, 2016, requesting that the Court take judicial notice of a quitclaim deed, dated November 13, 2008, which transferred title of the Property from Navin to O'Reilly. (ECF No. 101 at 2.) The deed was not recorded until December 10, 2015. (ECF No. 101-1 at 4.)

Before trial, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which it should "freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In addition, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the

20

date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Thus, the Court may allow

O'Reilly to amend or supplement the FAC to allege that he is the owner of the Property because

of the quitclaim deed under Rule 15(d). The Court may deny leave to amend, however, "where

there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, futility of the amendment, etc.'" *Beckett v. Inc. Vill. of

Freeport*, No. CV 11-2163 LDW AKT, 2014 WL 1330557, at *5-6 (E.D.N.Y. Mar. 31, 2014)

(quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 213-14 (2d Cir. 2011)).

### 1. Bad Faith/Prejudice

In the FAC, O'Reilly never mentioned the quitclaim deed or his ownership—and in fact

took the position that he was a manager, rather than an owner, and that Navin was the owner. It

was not until after the Defendants' three motions to dismiss were fully briefed and O'Reilly filed

the motion to substitute that he mentioned the quitclaim deed, which had been recorded less than

a week before the motion was filed. O'Reilly's recording of the deed, an act apparently within

his control, was necessary to make his ownership effective against third parties. *See* Conn. Gen.

Stat. § 47-10(a) ("No conveyance shall be effectual to hold any land against any other person but

the grantor and his heirs, unless recorded on the records of the town in which the land lies. . . .").

It does not appear that there was anything stopping O'Reilly from recording the quitclaim deed

earlier. Further, because the foreclosure action was filed on June 13, 2007, the transfer—if it was

legally accomplished at all—may have been a fraudulent conveyance under Connecticut law. *See*

Uniform Fraudulent Transfer Act, Conn. Gen. Stat. Ann. § 52-552 *et seq*.[12] Under all these

---

[12] The Defendants dispute that the quitclaim deed evidences a bona fide transfer from Navin to O'Reilly.

circumstances, one could infer that O'Reilly acted in bad faith by waiting until after the motions to dismiss were fully briefed and then seeking to oppose the dismissal on the basis of the newly recorded deed. In any event, it would likely be prejudicial to the Defendants—which filed motions to dismiss and reply briefs after the Plaintiffs had already amended their complaint once—to allow O'Reilly to plead ownership now. Still, there may be circumstances unknown to the Court that bear on these issues and the parties have not briefed them. Before making any findings on these points, the Court will give them an opportunity to do so.

### 2.  Futility

There is also reason to believe that any amendment or supplement that alleged O'Reilly's ownership would be futile. To the extent that O'Reilly's ownership of the Property helps his claim that the mortgage agreement is invalid, and to the extent that O'Reilly, as a new owner who was not a party to the mortgage, has standing to make that claim, such a claim is likely precluded by the res judicata effect of the state court foreclosure judgment. "Res judicata precludes relitigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Devlin*, No. 06-30195 ASD, 2010 WL 122850, at *2 (Bankr. D. Conn. Jan. 5, 2010) (quoting *EDP Med. Computer Sys., Inc. v. United States,* 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks omitted)). "Under Connecticut law, a judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose." *Id*. (quoting *Connecticut Natural Gas Corp. v. Miller,* 239 Conn. 313, 322, 684 A.2d 1173 (1996) (internal quotation marks omitted)). Thus, even if the claim that the original lender was not an existing corporation was not specifically raised in the state court foreclosure action, it could have been

and is thus merged into the foreclosure judgment. *Isaac v. Truck Serv., Inc.*, 253 Conn. 416, 420, 752 A.2d 509, 512 (2000) (Claim preclusion "bars not only subsequent relitigation of a claim previously asserted, but subsequent relitigation of any claims relating to the same cause of action which were actually made or which might have been made.") (internal quotation marks omitted).

O'Reilly was not a party to the state foreclosure court action, but if he was in privity with Navin, he would also be precluded from raising such a claim under the doctrine of claim preclusion or res judicata. *Isaac.* 253 Conn. at 420 ("a valid, final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand."). Because he now claims he is the owner of the Property by quitclaim deed, O'Reilly was likely in privity with Navin. "A successor in interest of property that is the subject of a pending action to which his transferor is a party is bound by and entitled to the benefits of the rules of res judicata to the same extent as his transferor" unless: (1) a procedure exists for notifying potential successors in interest of pending actions concerning property, the procedure was not followed, and the successor did not otherwise have knowledge of the action; or (2) the opposing party in the action knew of the transfer to the successor and knew also that the successor was unaware of the pending action." *Comm'r of Envtl. Prot. v. Farricielli*, 307 Conn. 787, 815, 59 A.3d 789, 806 (2013) (*quoting* Restatement (Second) of Judgments § 44 (1982)). Thus, as long as O'Reilly was aware that Navin was a party to the foreclosure action when the transfer of the Property occurred in 2008, he is likely bound by res judicata to the same extent as Navin.

Nonetheless, because the parties have not briefed these issues in any detail, the Court declines to reach any conclusions on a request to amend or supplement at this time.

**IV.    CONCLUSION**

Because O'Reilly is not a proper party, he may not substitute for Navin. Further, because no proper party has moved to substitute for Navin within 90 days of the notice of his death, and O'Reilly's own claims fail to state a claim on which relief can be granted, this action is DISMISSED.

If O'Reilly wishes to amend and/or supplement the FAC, then within 30 days of this order he must file: (1) a motion to amend or supplement the FAC, (2) a statement of no more than 20 pages explaining why the Court should grant him leave to amend and/or supplement the FAC, given the potential obstacles of futility, bad faith, and prejudice, and (3) a copy of his proposed supplement or amended pleading setting forth plausible claims within the limits of Rule 11. Within 30 days after O'Reilly's filing, Defendants may file a single joint response brief of no more than 20 pages. There shall be no replies.

Should O'Reilly not file the pleadings described above, within 30 days, the case will be dismissed with prejudice.

IT IS SO ORDERED.

_____
/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            August 8, 2016

24