UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFREY NAVIN and JOHN O'REILLY on behalf of themselves and of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., WELLS FARGO INSURANCE, INC., ASSURANT INC., AMERICAN SECURITY INSURANCE COMPANY, AMERICA'S SERVICING COMPANY and HSBC BANK USA,<br><br>Defendants. | No. 3:15-cv-671 (MPS) |

## MEMORANDUM AND ORDER

Plaintiff Jeffrey Navin—who died in 2015—and *pro se* plaintiff John O'Reilly (collectively, "Plaintiffs") brought this lawsuit against the following Defendants: HSBC Bank USA, N.A. ("HSBC"); Wells Fargo Bank, N.A., America's Servicing Company, and Wells Fargo Insurance, Inc. (collectively, the "Wells Fargo Defendants"); and Assurant Inc. ("Assurant") and its subsidiary American Security Insurance Company ("ASIC") (collectively, the "Assurant Defendants"). (First Amended Complaint ("FAC"), ECF No. 8 at 1.)

On August 8, 2016, the Court dismissed Plaintiffs' claims challenging Defendants' practice of forcing residential borrowers, such as Navin, to pay for homeowners' insurance that lenders obtained to protect their interest when the homeowners failed to maintain their own insurance. (ECF No. 113.) Plaintiff O'Reilly now moves to amend the First Amended Complaint (ECF No. 114) by filing the proposed Second Amended Complaint (ECF No. 117), and to substitute Christopher Carveth, Esq., administrator of the estate of Jeffrey Navin, as the proper plaintiff in this action. (ECF No. 116.)

1

For the reasons discussed below, the motions are DENIED.

## I. Factual Background

I assume familiarity with the underlying facts and the decision rendered on August 8, 2016. (ECF No. 113.) I recount certain relevant procedural facts below.

Plaintiffs filed their Complaint on May 5, 2015. (ECF No. 1.) On June 19, 2015, Plaintiffs amended their pleading and filed the FAC. (ECF No. 8.) On or about October 30, 2015, Navin was declared to have died. (ECF No. 116 at 1.) Defendants filed a Suggestion of Death on November 20, 2015. (ECF No. 97.) On December 1, 2015, Christopher Carveth, Esq. was appointed by the Trumbull Probate Court to be the administrator of Navin's estate. (ECF No. 115-1 at 9.)

On August 8, 2016, the Court dismissed the FAC and denied O'Reilly's motion to substitute himself for Navin. (ECF No. 113.) The Court ruled that O'Reilly's motion to substitute himself for Navin failed under Connecticut's Survival Statute, Conn. Gen. Stat. § 52-599(a), which made the proper party for substitution the executor or the administrator of Navin's estate. (ECF No. 113 at 11.) The Court also ruled that, for his own part, O'Reilly failed to state a claim on which relief could be granted. The Court provided O'Reilly thirty days within which to file a motion to amend or supplement the FAC, a statement explaining why the Court should grant him leave to amend or supplement the FAC given the potential obstacles of futility, bad faith, and prejudice, and a copy of his proposed supplemental or amended pleading. (ECF No. 113 at 24.)

On September 6, 2016, O'Reilly filed a motion to amend the FAC and a motion to substitute Christopher Carveth for Navin as the proper plaintiff. (ECF Nos. 114, 116.) O'Reilly filed a proposed Second Amended Complaint on September 7, 2016. (ECF No. 117.) Defendants filed a joint opposition to both of O'Reilly's motions on October 6, 2016 (ECF No. 118.) Carveth

also filed a memorandum in opposition to O'Reilly's motion to substitute, representing that he had decided not to pursue the claims belonging to Navin's estate. (ECF No. 121.)

## II. Legal Standards

### A. Substitution

Rule 25 provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1). Whether a person is "the proper party" is "a question of state law." *Coleman v. Sys. Dialing LLC*, No. 15 CV 3868 (DLC), 2016 WL 1169518, at *2 (S.D.N.Y. Mar. 22, 2016); *Falls v. Novartis Pharm. Corp.*, No. 3:13-CV-270 (JBA), 2014 WL 3810246, at *2 n.3 (D. Conn. Aug. 1, 2014) (noting that "state substantive law determines whether a claim survives death"). Connecticut's Survival Statute provides that "[a] cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person." Conn. Gen. Stat. § 52-599(a).

### B. Amendment

Before trial, "a party may amend its pleading only with the opposing party's written consent or the court's leave," which the Court should "freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). In addition, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Despite the liberal standard for amending or supplementing pleadings, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."

3

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *See also Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (holding that a motion to supplement will be granted "[a]bsent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility"). "In this Circuit, it is well settled that an amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis." *Gilbert, Segall & Young v. Bank of Montreal*, 785 F. Supp. 453, 457 (S.D.N.Y. 1992); *see also Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 403 (S.D.N.Y. 2013) ("'Futility' under Rule 15 turns on whether the proposed pleading would state a claim upon which relief could be granted.") (quoting *Dougherty v. N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87-88 (2d Cir. 2002)).

### III. Discussion

#### A. Motion for Substitution

O'Reilly moves to substitute Carveth, an attorney and administrator of Navin's estate, as the proper plaintiff in this suit. As a party to the action, O'Reilly was entitled to file the motion for substitution. Under Connecticut law, Carveth is a proper party for substitution. However, Defendants argue that O'Reilly has not demonstrated that Carveth consents to the substitution. For his part, Carveth states both that he does not consent and that neither O'Reilly nor Navin's former attorney Kenneth Davis has authority to speak for the estate or direct the disposition of the estate's claims.[1] Carveth argues that as the Administrator of the estate, he has "sole authority to pursue or abandon the claims brought by Navin prior to his death." (ECF No. 121 at 2.)

---

[1] Attorney Kenneth Davis, former attorney to Navin, co-signed O'Reilly's motion, but no longer represents a party in this action, as any attorney-client relationship that Attorney Davis had with Navin neither survived Navin's death nor transferred to the estate. *See Gothberg v. Town of Plainville*, 305 F.R.D. 28, 31 (D. Conn. 2015) ("[A]n attorney-client relationship terminates upon the death of the client . . . and extinguishes any notion that an attorney-client relationship

4

Courts applying Rule 25(a) have suggested that consent of the person identified as the party for substitution is a baseline requirement. *See Atkins v. City of Chicago*, 547 F.3d 869, 874 (7th Cir. 2008) (Rule 25 "protects the nonparty from finding himself . . . in a situation in which a lawyer for someone else . . . has thrust him into a case that he would rather not be in . . . ."); *see also Hendricks v. Liberty Nat. Life Ins. Co.*, 2013 WL 4544299, at *2 (N.D. Okla. Aug. 27, 2013) (denying motion to substitute party where the decedent's attorney failed to identify the personal representative of the decedent's estate); *Rocco v. Bickel*, No. No. 1:12-CV-829, 2013 WL 4000886, at *3 (M.D. Pa. Aug. 5, 2013) (denying motion to substitute where "no substitute party has come forward volunteering to prosecute [the] case"); *Escareno v. Noltina Crucible & Refractory Corp.*, 172 F.R.D. 517, 521 (N.D. Ga. 1994) (indicating that if plaintiff "had identified a proper substitute and obtained that substitute's consent to becoming a party," the court likely would have permitted the substitution, despite plaintiff's untimeliness).

Here, the party O'Reilly seeks to substitute—and the only proper party for substitution under the governing law—does not consent on the grounds that he has "deemed it in the best interests of the Estate to allow Navin's claims to be dismissed." (ECF No. 121 at 3.) O'Reilly points out that Carveth has consented to substitution in other actions involving Navin's estate. (ECF No. 123 at 1-2.)[2] But as fiduciary of Navin's estate, Carveth has authority to determine which

---

automatically vests between the attorney and the estate of the deceased client."); *Morales v. CT Holdings, Inc.*, No. 01 CIV. 1303 KMW KNF, 2001 WL 1204011, at *1 (S.D.N.Y. Oct. 10, 2001) ("A decedent's attorney is not a party to the action and, perforce of the decedent's death, ceases to represent him . . . ."). Attorney Davis is warned that signing pleadings in a matter in which he is neither a party nor an attorney representing a party is not authorized.

[2] On Defendants' motion, the Court takes judicial notice of Carveth's withdrawal on behalf of Navin's estate of the appeal in the state court action, *HSBC Bank, N.A. v. Navin*, Docket No. AC38687 (Conn. App. July 22, 2016). (ECF No. 119-1 at 2.) *See Global Network Comms., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings.") (internal citation omitted).

claims to pursue or abandon on behalf of the estate. *See* Conn. Gen. Stat. § 45a-234 (providing that fiduciaries may "compromise . . . sue on or defend, abandon, or otherwise deal with and settle claims in favor of or against the estate . . . as the fiduciary shall deem advisable . . . .").

Even construed as a motion for compulsory joinder of Navin's estate as a plaintiff in this action, the motion similarly fails. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.") (internal quotations and citations omitted). Rule 19 of the Federal Rules of Civil Procedure provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). None of the bases for compulsory joinder exist here. The Court's prior decision dismissing the claims brought by O'Reilly in his own right demonstrates that the Court may accord complete relief in this action without joinder of Navin's estate. The administrator of the estate has decided not to pursue any claims related to this action, making it clear that denying the motion will not in any way impair or impede his ability to protect the estate's interests. This is also not a case in which nonjoinder will cause the parties to be subject to a substantial risk of incurring double, multiple, or inconsistent obligations. Moreover, "[j]oinder of an involuntary plaintiff is 'disfavored'" under Rule 19. *JMF Grp., LLC v. Majestic Foods, Inc.*, No. 3:05-CV-00484 (CFD), 2006 WL 2587798, at *2 (D. Conn. Sept. 6, 2006).

Because I decline to compel the administrator of Navin's estate—the only proper party for substitution for Navin—to pursue claims against his determination that doing so would not be in

6

the best interest of the estate, the motion for substitution is DENIED.[3] As a result, Navin's claims are dismissed with prejudice.

### B. Motion to Amend

O'Reilly argues that he should have an opportunity to file the proposed Second Amended Complaint because the proposed amendment is not in bad faith, and because he is not precluded from bringing his claims by the foreclosure judgment rendered by the state trial court and affirmed by the Connecticut Appellate Court,[4] such that an amendment would not be futile. O'Reilly makes the following relevant changes from the First Amended Complaint to the proposed Second Amended Complaint:

- O'Reilly states that "Navin was the Owner of the property at the time up until the filing of this lawsuit," and that "O'Reilly now holds title to the property" (ECF No. 117 at 16);

- O'Reilly adds allegations that the mortgage and assignment at issue are void because American Brokers' Conduit is a fictitious entity, and that use of a fictitious entity in foreclosure actions brought by Defendants was fraudulent, and therefore supportive of O'Reilly's RICO claims (ECF No. 117 at 6-9, 39-40);

---

[3] Defendants also argue that O'Reilly has not demonstrated excusable neglect in his failure to move for substitution of a proper party within 90 days after service of the Suggestion of Death, as required under Rule 25. (ECF No. 118 at 5-6.) *See also Falls v. Novartis Pharm. Corp.*, 2014 WL 3810246, at *4 (D. Conn. Aug. 1, 2014) (denying motion for substitution where plaintiff did not demonstrate excusable neglect). Because I decline to substitute the administrator of Navin's estate without his consent, I need not consider whether O'Reilly's delay in moving for substitution of a proper party is excusable.

[4] *See HSBC Bank, N.A. v. Navin*, 129 Conn. App. 707 (2011) (affirming the Superior Court's foreclosure judgment). The Connecticut Supreme Court denied certification. *HSBC Bank, USA, N.A., v. Navin*, 302 Conn. 948 (Nov. 1, 2011).

7

- O'Reilly adds allegations regarding the two classes he seeks the Court to certify (ECF No. 117 at 52-53).

    1. **Bad Faith/Prejudice**

In the Court's prior order, the Court gave O'Reilly an opportunity to demonstrate circumstances that would explain why he waited until after Defendants' three motions to dismiss were fully briefed and he had filed the motion to substitute to ask the Court to take judicial notice of the quitclaim deed transferring title of the Property from Navin to O'Reilly (ECF No. 101 at 2), which he had recorded less than a week before the motion to substitute was filed. (ECF No. 113 at 21.) The Court also gave O'Reilly an opportunity to demonstrate why the Court should not infer bad faith both from O'Reilly's delay in recording the deed or disclosing its existence and from the possibility that the transfer of the deed was a fraudulent conveyance under Connecticut's Uniform Fraudulent Transfer Act, Conn. Gen. Stat. Ann. § 52-552 *et seq*.

O'Reilly states in his motion to amend that "[t]he only reason . . . O'Reilly filed the [quitclaim] Deed was because Mr. Navin had been murdered." (ECF No. 115 at 7.) O'Reilly further states that although he held the quitclaim deed since 2008, as Navin and O'Reilly were family and both in good health, and as Navin allowed O'Reilly's family to live on the property, O'Reilly saw no reason to record the deed. (*Id*.) While delay in recording a deed is not necessarily evidence of bad faith, the Connecticut Supreme Court has recognized that "delays in the recordation of deeds necessarily impair the integrity of our recording system." *Farmers and Mechanics Sav. Bank v. Garofalo*, 219 Conn. 810, 822 (1991). But, as discussed below, because O'Reilly's proposed amendments are futile, I need not resolve whether his delay in recording the deed and supplementing his pleadings to reflect the fact that he is an alleged owner of the Property was in bad faith.

## 2. Futility

As the Court has already determined that the allegations set forth in the First Amended Complaint failed to state a claim on which relief may be granted, the Court need only consider whether the proposed changes would now enable O'Reilly to state a claim, or whether amending or supplementing the complaint would be futile. Nothing in the proposed Second Amended Complaint affects the Court's earlier ruling that O'Reilly's claims regarding Defendants' lender-placed insurance practices and the servicing of Navin's mortgage fail as a matter of law. (*See* ECF No. 113 at 13-20.) More specifically, as the Court previously ruled, O'Reilly's breach of contract and breach of the implied covenant of good faith and fair dealing claims (Count One) fail because O'Reilly does not allege that he was a party to or a contemplated beneficiary of the mortgage (ECF No. 113 at 13); his unjust enrichment claim (Count Two) fails because he does not allege that he was an insured or a policyholder of a lender-placed insurance policy, or that he made any payments as a result of such a policy (*id*. at 14); his RICO claims (Counts Three and Four) fail because he does not allege that he suffered injuries to business or property as a result of Defendants' conduct and because he does not plead circumstances of fraud with particularity (*id*. at 15); his aiding and abetting breach of fiduciary duty claim (Count Five) fails because O'Reilly does not allege that he had a fiduciary relationship with any of the Defendants (*id*. at 17); his CUTPA and CUIPA claims (Count Six) fail because O'Reilly neither alleges that Defendants' conduct proximately caused his injuries, nor that he was a consumer, competitor, or some other businessperson affected by Defendants' conduct (*id*. at 18-19); and his claim for declaratory and injunctive relief (Count Seven) fails in the absence of another plausible claim. (*Id*. at 20.) Nothing in the proposed Second Amended Complaint cures these fundamental defects.

As I suggested in the previous ruling, the question here is whether O'Reilly's new allegation regarding his ownership of the Property "helps his claim that the mortgage agreement is invalid . . . ." (ECF No. 113 at 22.) The relevant proposed changes in the Second Amended Complaint fall into two categories: 1) O'Reilly's disclosure that he is now the owner of the Property; and 2) O'Reilly's added allegations that Defendants used "fictitious entities" such as American Brokers' Conduit to bring "illegal foreclosure actions" using "false and fraudulent documents." The Court previously observed that such amendments or supplements to the First Amended Complaint likely would be futile, as O'Reilly's ownership of the Property—to the extent it confers standing on O'Reilly to contest the validity of the mortgage as a successor to Navin—would likely make his claims subject to the doctrine of res judicata based on the mortgage foreclosure judgment against Navin. However, as the parties had not briefed the issue in detail, the Court gave O'Reilly an opportunity to demonstrate that he would not be precluded by the state court foreclosure judgment from raising his claims of invalidity in this action. In response, O'Reilly argues that the foreclosure action is ongoing in state court, such that the state court has not rendered a final judgment that would have preclusive effect. (ECF No. 115 at 10.)

Federal courts considering the preclusive effect of a state court judgment on a subsequent federal action "consult the preclusion laws of the state in which the judgment was issued." *Nestor v. Pratt & Whitney*, 466 F.3d 65, 71 (2d Cir. 2006) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Connecticut law on res judicata therefore applies to whether the foreclosure judgment is preclusive of O'Reilly's claims. *See In re Devlin*, No. 06-30195 ASD, 2010 WL 122850, at *1 (Bankr. D. Conn. Jan. 5, 2010) (applying Connecticut preclusion law).

"Generally, for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits of a court of competent jurisdiction; (2) the parties to the prior

and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." *Wheeler v. Beachcroft, LLC*, 320 Conn. 146, 156-57 (2016). "Under Connecticut law, a judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose." *In re Devlin*, 2010 WL 122850, at *2 (quoting *Conn. Natural Gas Corp. v. Miller*, 239 Conn. 313, 322 (1996)).

First, the Connecticut state court, a court of general jurisdiction, had jurisdiction to enter judgment on the foreclosure action. O'Reilly argues that "strict foreclosure is not a final judgment until the law days have passed and redemption has not taken place" (ECF No. 15 at 10), citing no authority in support of this proposition. In any event, Navin appealed the foreclosure judgment and the Appellate Court affirmed it—all years before this lawsuit was filed, *see HSBC Bank USA, N.A. v. Navin*, 129 Conn. App. 707 (2011)—which is enough to make it final for purposes of res judicata. *Knoblaugh v. Marshall*, 64 Conn. App. 32, 36 (2001) ("[T]he traditional standard of finality for purposes of appeal will generally also provide the standard of finality for purposes of preclusion.") (internal quotation marks omitted).

Second, as O'Reilly now claims to be the owner of the Property via the quitclaim deed, O'Reilly was in privity with Navin. Privity "is, in essence, a shorthand statement for the principle that res judicata should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." *Wheeler*, 320 Conn. at 166 (internal quotations and alterations omitted). "The crowning consideration is that the interest of the party to be precluded must have been sufficiently represented in the prior action so that the application of res judicata is not inequitable." *Id*. (internal quotations and alterations omitted). "[A] successor in interest of property that is the subject of a pending action to which his

11

transferor is a party is bound by and entitled to the benefits of the rules of res judicata to the same extent as his transferor, unless (1) a procedure exists for notifying potential successors in interest of pending actions concerning property, the procedure was not followed, and the successor did not otherwise have knowledge of the action; or (2) the opposing party in the action knew of the transfer to the successor and knew also that the successor was unaware of the pending action." *Comm'r of Envtl. Prot. v. Farricielli*, 307 Conn. 787, 813 n.20 (2013) (quoting Restatement (Second) of Judgments § 44 (1982)). O'Reilly does not allege that he was unaware that Navin was a party to the foreclosure action when the transfer of the Property occurred in 2008. O'Reilly also does not allege that Defendants were aware of the quitclaim deed, which was recorded on December 10, 2015, six days before O'Reilly filed his first motion to substitute himself for Navin. (ECF No. 101; ECF No. 101-1 at 4.) Thus, as a successor in interest, O'Reilly is in privity with Navin and bound by the foreclosure judgment.

Third, Navin had the opportunity to litigate fully the matters raised by the new allegations in the state foreclosure action. "The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it." *Girolametti v. Michael Horton Assoc., Inc.*, 173 Conn. App. 630 (2017). "Under Connecticut law, a defendant in a foreclosure proceeding can only raise defenses relating to the making, validity, and enforceability of the mortgage."[5] *Packer v. SN Servicing Corp.*, No. 3:04-CV-1506,

---

[5] A split of authority exists among the Connecticut courts regarding which special defenses may be raised in a foreclosure action. "There have been many and varied interpretations of the 'making, validity and enforcement' requirement by Connecticut Superior Court decisions. There is a line of cases which interprets the phrase very strictly to mean the execution and delivery of an enforceable instrument, and not the occurrences that may arise between the parties during the course of their loan relationship . . . . A second line of cases, however, interprets the 'making, validity, and enforcement' requirement less rigidly." *Bayview Loan Serv., LLC v. Yoney Realty Corp.*, No. CV116016983S, 2012 WL 1509945, at *3 (Conn. Super. Ct. Apr. 4, 2012) (collecting cases). I need not take sides in this debate, because the challenge O'Reilly seeks to make—that the original

2008 WL 359411, at *3 (D. Conn. Feb. 8, 2008) (citing *Fidelity Bank v. Krenisky*, 72 Conn. App. 700, 705-06 (2002)). "Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles." *Bank of Am., N.A. v. Groton Estates, LLC*, No. CV096001697, 2010 WL 3259815, at *2 (Conn. Super. Ct. July 13, 2010) (internal quotations omitted). O'Reilly's new allegations regarding Defendants' use of a "fictitious entity" and "robo-signed documents" ultimately concern the validity of Navin's mortgage, the assignment of his mortgage to HSBC, and the enforceability of the mortgage through the foreclosure action. Navin already vigorously litigated HSBC's standing to bring the foreclosure action, and took his case to the Connecticut Appellate Court on this issue. *See HSBC Bank, N.A. v. Navin*, 129 Conn. App. 707, 710 (2011) (concluding that HSBC had standing to initiate suit). Though based on a different theory, O'Reilly's new allegations are similar and in any event assert matters Navin could have raised in that action—that the original mortgagee did not exist and thus that HSBC did not have standing to bring, or otherwise should not have prevailed, in the foreclosure action.[6]

---

mortgagee did not exist as a legal entity—would fit even the narrow definition of the "making, validity, and enforcement" requirement.

[6] O'Reilly's statement in support of his motion to amend reveals another problem with his proposed amendments: O'Reilly is inviting the Court to weigh in on the Connecticut Appellate Court's ruling affirming the foreclosure judgment, in light of the fact that he allegedly recently discovered that American Brokers' Conduit is a "fictitious entity." (ECF No. 115 at 11 ("The problem is and remains that the Appellate Court was unaware of the fact that Defendants had provided the Court with an American Brokers' Conduit Note, which was a nullity from a fictitious entity. It could well be assumed that if this fact was known, by the Appellate Court at the time, the decision would have been quite different.").) To the extent the new allegations are challenging the validity of the foreclosure judgment, they are likely also barred by the *Rooker-Feldman* doctrine, which aims to prevent a plaintiff who lost in state court from attempting to have his claims reheard in federal court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "*Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010). Judge Underhill concluded that where Navin brought a variety of claims alleging that several of the same defendants as in this action

O'Reilly's allegations also might be read to imply that Defendants obtained the foreclosure judgment fraudulently by use of a fictitious entity. (ECF No. 117 at 39, 45 (including in the proposed Second Amended Complaint allegations that Defendants brought "fraudulent and illegal foreclosure actions" and "deceived the Court as to the manner or preparation of the documents used for foreclosure," amounting to a "fraud on the court").) "Res judicata does not apply to judgments obtained through fraud or collusion . . . . A party may not, however, circumvent the doctrine by merely *alleging* fraud." *Weiss v. Weiss*, 297 Conn. 446, 470 (2010) (affirming grant of summary judgment and holding that res judicata precluded plaintiff's fraud claim where plaintiff had not offered any evidence in support of her claim) (citations omitted) (emphasis in original). "Additionally, unless a defendant had fraudulently concealed the relevant facts, the discovery of additional facts following judgment does not block the application of res judicata when the facts and events themselves arose prior to the filing of the original complaint and it was only the plaintiff's awareness of these facts that came later." *Girolametti*, 173 Conn. App. at 652-53 (finding that plaintiff's fraud claims related to defective building parts were barred by res judicata, as plaintiff had an opportunity to bring the claims in prior litigation concerning construction project contracts) (internal quotation marks omitted). O'Reilly does not plead facts suggesting that the

---

committed unfair and deceptive practices in connection with the servicing of Navin's mortgage, Navin had presented a "direct invitation for this court to review the final judgment of the state courts with which he disagrees," which the Court declined to do. *Navin v. HSBC Bank USA*, No. 3:12-CV-00752, 2013 WL 3961523, at *2 (D. Conn. Aug. 2, 2013). "[C]ourts in this circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Gonzales v. Ocwen Home Loan Serv.*, 74 F. Supp. 3d 504, 514 (D. Conn. 2015) *reconsideration denied*, No. 3:14-CV-53 (CSH), 2015 WL 2124365 (D. Conn. May 6, 2015), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat. Trust Co.*, 632 Fed. Appx. 32 (2d Cir. 2016). *But see Tanasi v. CitiMortgage, Inc.*, -- F. Supp. 3d --, 2017 WL 2837477, at *9-10 (D. Conn. June 30, 2017) (finding that plaintiffs did not invite federal review of state foreclosure judgment by bringing claim that mortgage servicer improperly handled mortgage modification requests, such that claims were not barred by *Rooker-Feldman* doctrine).

Defendants fraudulently concealed the alleged fact that the original mortgagee did not exist as a valid corporate entity.

Fourth, the same underlying claim is at issue. Connecticut uses a "transactional test as a guide to determining whether an action involves the same claim as an earlier action so as to trigger operation of the doctrine of res judicata." *Girolametti*, 173 Conn. App. at 649. "The claim that is extinguished by the judgment in the first action includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id*. at 650-51. "What factual grouping constitutes a transaction, and what groupings constitute a series, are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage . . . . In applying the transactional test, we compare the complaint in the second action with the pleadings and the judgment in the earlier action." *Id*. at 651. In foreclosure actions, a "counterclaim must simply have a sufficient relationship to the making, validity or enforcement of the subject note or mortgage in order to meet the transaction test." *Tanasi v. CitiMortgage, Inc.*, --- F. Supp. 3d ---, No. 3:16-CV-00727 (VAB), 2017 WL 2837477, at *13 (D. Conn. June 30, 2017) (quoting *CitiMortgage, Inc. v. Rey*, 150 Conn. App. 595, 605 (2014)). "Claims questioning the validity of the plaintiff's right to seek foreclosure are sufficiently connected to the foreclosure action." *Id*. On the other hand, "[c]laims relating to a broad range of conduct, or to an extrinsic agreement between the parties, rather than 'narrowly bearing on the mortgage note itself or its enforcement,' do not pass the transaction test." *Tanasi*, 2017 WL 2837477, at *13 (quoting *JP Morgan Chase Bank v. Rodrigues*, 109 Conn. App. 125, 134-35 (2008)).

Here, O'Reilly's claims arise out of the same transaction or series of transactions as the foreclosure action, as his claims concern the mortgage agreement entered into between Navin and Defendants, the validity of that mortgage, and Defendants' right to enforce the mortgage through foreclosure. *See Omotosho v. Freeman Investment & Loan*, 136 F. Supp. 3d 235, 249 (D. Conn. 2016) (holding that plaintiff mortgagor's claims against mortgagee bank and assignor concerning the validity of loan documents or their enforcement in a prior foreclosure action were barred by res judicata); *Tanasi*, 2017 WL 2837477, at *15 (holding that plaintiffs' claims involving defendants' failure to respond to loan modification or loss mitigation applications, as well as claims that defendants improperly processed plaintiffs' requests were related to the foreclosure action and precluded, while claims arising from interactions among the parties unrelated to the foreclosure action, including claims that defendants misled consumers about its policies and failed to comply with RESPA notice requirements were not). Accordingly, res judicata bars O'Reilly's proposed new claims.

Even if O'Reilly's proposed new allegations were not precluded, they would fail on the merits and could not withstand a motion to dismiss under Rule 12(b)(6). First, as noted above, the proposed changes do not cure the defects the Court identified in its prior order. Second, the additional allegation that Defendants used a fictitious corporate entity, American Brokers' Conduit (ECF No. 117 at 39-40), would not affect the validity of the mortgage or the foreclosure judgment. As the Connecticut Appellate Court already noted, regardless of the validity of the assignment of the mortgage (or the corporate existence of the original mortgagee), under Connecticut law, HSBC was entitled to bring a foreclosure action as the holder of the note. *See HSBC Bank N.A. v. Navin*, 129 Conn. App. 707, 711 n.5 (2011) ("mak[ing] no determination as to the validity of the assignment of the mortgage to the plaintiff . . . . [but] establish[ing] that the plaintiff, as the holder

of the note, had standing to bring the present foreclosure action"). Thus, O'Reilly's proposed allegations aimed at the validity of the mortgage and the assignments would not state a claim even if they were not barred by res judicata.

Because O'Reilly's proposed new claims lack merit, granting O'Reilly leave to file the Second Amended Complaint would be futile.

## IV. Conclusion

For the reasons discussed herein, the Motion for Substitution is DENIED. The Motion to Amend is DENIED. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:	Hartford, Connecticut
	September 29, 2017